IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 16, 2006

### STATE OF TENNESSEE v. LATONYA TAYLOR

**Appeal from the Criminal Court for Davidson County**
**No. 2002-A-443     J. Randall Wyatt, Judge**

---

**No. M2005-00313-CCA-R3-CD - Filed July 31, 2006**

---

The Defendant, Latonya Yvonne Taylor, was convicted by a Davidson County jury of aggravated robbery, especially aggravated kidnapping, and two counts of kidnapping.  For these convictions, the Defendant received an effective twenty-three-year sentence in the Department of Correction.  In this appeal as of right, the Defendant presents the following issues for our review:  (1) whether the trial court erred in denying her motion to suppress her statement given to the police;  (2) whether the trial court improperly limited the scope of the Defendant's mother's testimony; (3) whether the evidence is sufficient to support her conviction for especially aggravated kidnapping; and (4) whether the trial court erred by imposing consecutive sentences.  After review, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

C. LeAnn Smith, Nashville, Tennessee, for the appellant, Latonya Taylor.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Angelita Dalton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### Factual Background

On March 8, 2002, a Davidson County grand jury returned an indictment against the Defendant and her counsin, Melanie R. Taylor, charging them with aggravated robbery and three counts of especially aggravated kidnapping.[1]  A two-day trial was conducted on the charges in April of 2004.

---

[1]The Defendant's case was severed from her co-defendant's prior to trial.

The evidence at trial established that, on March 15, 1997, Ms. Lynette Michelle McGarr was working at Arby's on Elm Hill Pike in Davidson County. At approximately 10:45 p.m., after the store had closed, the Defendant "tapped on the window" and requested to come inside to make a phone call. According to Ms. McGarr, she was acquainted with the Defendant because the Defendant had worked at the restaurant a few months prior to this time. Ms. McGarr stated, the Defendant "begged and pleaded . . . to let her use the phone. I said, you know, I can't open -- you know, let you in. And she kept pleading with -- you know, begging me, so I said, okay. Come in real quickly and use the phone." Ms. McGarr let the Defendant in to use the telephone, and she returned to her work. Shortly thereafter, Ms. McGarr observed the Defendant walking toward the store exit. Ms. McGarr attempted to have the Defendant wait to exit the store so that she could "check, make sure there was nobody out there" but, before Ms. McGarr was able to reach the exit, the Defendant was "backing up" with "her hands up. "

At that time, two individuals, a man and a woman, entered the restaurant. The woman pointed a gun at Ms. McGarr and ordered her, two other employees who were working at the restaurant, and the Defendant to "go to the back." The Defendant and the other two employees were forced into the freezer. Ms. McGarr was forced into the restaurant's office at gunpoint and ordered to open the safe. The robbers took the money from the safe, and Ms. McGarr was taken to the freezer with the Defendant and the other employees. The robbers then left the restaurant. Once they were certain the robbers were gone, they exited the freezer, and Ms. McGarr telephoned the police.

According to Ms. McGarr, the Defendant came into the restaurant earlier that evening to order food. She also saw the man and the woman who later robbed the store in the restaurant at the same time as the Defendant and, although they stood behind the Defendant, she did not observe any interaction between them. The other two Arby's employees, Chris Halpin and Christopher Rigsby, gave testimony similar to that of Ms. McGarr.

Following interviews with the Defendant, she was developed as a suspect in the crimes. On July 19, 2001, police conducted video surveillance of the Defendant and a confidential informant named Brook Nason in a hotel room at the Peachtree Inn. During a conversation between the two women, the Defendant admitted, "I plotted it all out." The Defendant also admitted to sharing in the proceeds of the robbery.

Thereafter, the Defendant was interviewed by TBI Agent Willie Stout and confessed to her involvement in the crime. The Defendant told Agent Stout that they stole approximately $4,000 from the Arby's.

The Defendant did not testify on her behalf at trial; she did, however, offer the testimony of her mother, Ms. Diane Taylor. Her mother testified that the Defendant had problems at school, dropped out in the tenth grade, and started drinking at a young age. Ms. Taylor described the relationship between her daughter and the co-defendant, Melanie Taylor. She stated, "Melanie was the leader. She would just basically, tell Latonya, you know what to do."

The jury found the Defendant guilty as charged for the aggravated robbery and especially aggravated kidnapping of Ms. McGarr and guilty of the lesser-included offense of kidnapping as to the other two store employees. Following a sentencing hearing, the trial court sentenced the Defendant to eight years at 100% for the aggravated robbery conviction, fifteen years at 100% for the especially aggravated kidnapping conviction, and three years at 30% for each kidnapping conviction. The trial court ordered the sentences for aggravated robbery and especially aggravated kidnapping to be served consecutively to one another, for an effective sentence of twenty-three years at 100%.

The Defendant filed a motion for new trial, which was denied. This timely appeal followed.

## ANALYSIS

### I. Motion to Suppress

First, the Defendant argues that the trial court erred by denying her motion to suppress her statement given to Agent Stout. The State argues that the Defendant has waived this issue by failing to prepare an adequate record for review, specifically transcripts of the three suppression hearings.[2] We agree. It appears that hearings on the motion to suppress were held on October 30, 2002; July 2, 2003; and April 5, 2004. However, the Defendant has failed to include any portion of the hearing transcripts in the record before this Court. "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). It is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue. State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). In the absence of an adequate record on appeal, this court must presume that the trial court's actions below are correct and are supported by sufficient evidence. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). The State's argument that the Defendant has waived this issue has merit.

Notwithstanding, the record does contain an extensive order from the trial court detailing the facts presented and reciting the various findings of fact and conclusions of law made by the court in denying the motion. Also included in the record is the videotaped interview by Agent Stout on July 19, 2001, and the various expert reports evaluating the Defendant's mental capcaity. Thus, despite an incomplete record on appeal, we will review the propriety of the trial court's denial of the motion to suppress.

---

[2]The record does contain an affidavit from the court reporter. In the affidavit, the court reporter states that, in order to prepare the transcripts, she requested from the Defendant's counsel the dates of the hearings and that counsel failed to supply those dates.

The Defendant argues that she lacked the mental capacity to make a voluntary waiver of her Fifth Amendment rights. In support, she cites the testimony of the expert witnesses that she has low IQ scores, she is "mildly mentally retarded," she has a history of being institutionalized for mental problems, and her signature on the waiver of rights form was barely legible. The State argues that the evidence supports the trial court's finding that the Defendant had the capacity to make a knowing and intelligent waiver of her right to remain silent or to have counsel present during questioning. We agree with the State.

In Miranda v. Arizona, 384 U.S. 436, 471-75 (1966), the United States Supreme Court held that a defendant's statements made during a custodial interrogation are inadmissible at trial unless the State establishes that the defendant was informed of his right to remain silent and his right to counsel and that he knowingly and voluntarily waived those rights. Whether the defendant made a voluntary, knowing, and intelligent waiver of those rights depends "'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). The waiver must be "'made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" State v. Blackstock, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting State v. Stephenson, 878 S.W.2d 530, 544-45 (Tenn. 1994)). The State has the burden of proving the waiver by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997).

In denying the Defendant's motion to suppress on the basis of her claim of mental incompetence, the trial court noted, the signature "is very legible[;]" the Defendant promptly responded to questioning and provided a clear and logical narrative; the videotape depicts the Defendant as "coherent and lucid[;]" there was "no conclusive evidence that Defendant is even mentally retarded[;]" and the Defendant, according to Agent Stout, "did not present any indicators that she may be mentally retarded." Moreover, even if the Defendant qualified as mentally retarded, that fact is but one of a number of different factors to be considered in the determination of whether the waiver of her Miranda rights was knowing and voluntary.

In Blackstock, our supreme court observed:

Although there is likely to be a level of deficiency so great that it renders a defendant unable to make a knowing and intelligent waiver, nearly every court to consider the issue has held that mental impairments or mental retardation are factors that must be considered along with the totality of the circumstances. As one court has said, "no single factor, such as IQ, is necessarily determinative in deciding whether a person was capable of knowingly and intelligently waiving, and do [sic] waive, the constitutional rights embraced in the Miranda rubric." Fairchild v. Lockhart, 744 F. Supp. 1429, 1453 (E.D. Ark. 1989). Among the circumstances courts have considered are the Defendant's age, background, level of functioning, reading and writing skills, prior experience with the criminal justice system, demeanor, responsiveness to questioning, possible malingering, and the manner,

detail, and language in which the <u>Miranda</u> rights are explained. As a result, courts tend to reach results that are somewhat fact-specific.

<u>Blackstock</u>, 19 S.W.3d at 208 (footnote omitted). The totality of the circumstances in this case supports the trial court's finding that the Defendant knowingly, intelligently, and voluntarily waived her <u>Miranda</u> rights. Accordingly, we conclude that the trial court did not err in denying the Defendant's motion to suppress her statement.

## II. Opinion Testimony

The Defendant contends that the trial court erred in limiting the testimony of her mother. Specifically, the Defendant argues that her mother should have been allowed to testify

> about the Defendant's past history of being institutionalized. Ms. Taylor's testimony was not being offered to present expert testimony, but rather dates and places of the mental facilities she had been confined. The Court refused to allow any lay testimony via her personal observations of her daughter regarding Defendant's ability to organize thought.

With regard to this issue, the Defendant fails to provide citations to any law for this proposition. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); <u>see also</u> State v. Schaller, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997). Even if not waived, however, the Defendant's argument is without merit. The trial court, in limiting the Defendant's mother's testimony, stated:

> Well, I think when you -- when you say that she had problems in school and that she just got out of school in the eleventh grade and -- and she was not the leader type, you might be getting into that. But, when you start getting the fact that she was institutionalized and had mental problems, and this and that and the other, all that's doing is without really proving it or having a mental health expert here, raising questions that are not really, I don't think, properly before this Jury for them to think they've got to make a decision about her mental illness or her history of institutionalization, or whatever the word would be. So I think you can testify or let her testify that -- about her daughter and she had problems in school and this and that and the other. And that kind of goes to her leaving and the intent, and this and that and the other, but I -- I don't think -- I think if you get into all of this mental illness, which Judge Blackburn[3] has already resolved, she had hearings on this and that and the other, and that's not an issue, then that's trying to come in the back door in a way that's already been decided by the Trial Judge, who had originally had this case, Judge Blackburn, is not properly before this Jury. . . .

---

[3]The Defendant's case was transferred following severance from her co-defendant.

The propriety, scope, manner, and control of testimony and other evidence are matters entrusted to the sound discretion of the trial court. See State v. Hutchison, 898 S.W.2d 161, 172 (Tenn. 1994); State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994) (citing State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978)); see also Tenn. R. Evid. 611. "Absent a clear abuse, which has resulted in manifest prejudice to the accused, this court will not interfere with the trial court's exercise of its discretion in matters pertaining to the examination of witnesses." State v. Humphreys, 70 S.W.3d 752, 766 (Tenn. Crim. App. 2001) (citing Coffee v. State, 216 S.W.2d 702, 703 (Tenn. 1948)).

The trial court permitted the Defendant's mother to testify about the Defendant's social and intellectual problems and describe the co-defendant as a leader. The Defendant did not attempt to offer expert testimony on the issue of mental capacity at trial. We conclude that the trial court did not abuse its discretion in limiting the testimony of the Defendant's mother nor did any such limitation affect the verdict.

## III. Sufficiency

The Defendant also asserts that there is insufficient evidence for any rational trier of fact to find beyond a reasonable doubt that she was guilty of the especially aggravated kidnapping of the victim, Ms. McGarr.[4] In support of this assertion, the Defendant argues in her appellate brief:

> [T]he testimony from all the State's witnesses is that at no time did the Defendant have possession of a weapon. The Defendant's statement alone was not sufficient, beyond a reasonable doubt, that Defendant accomplished the act of kidnapping. It was the co-defendant, Melanie Taylor, who had possession of the weapon. It was the co-defendant, Melanie Taylor, who ordered the victim, Ms. McGarr, into the restaurant office to open the safe. Defendant was locked in the freezer with the other victims during this time.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the

---

[4]The Defendant initially frames the issue as challenging the sufficiency of the evidence for all of the crimes for which she was convicted. However, the argument section of her brief focuses solely on her conviction for especially aggravated kidnapping. Accordingly, this opinion will address her sufficiency argument only as it pertains to her conviction for especially aggravated kidnapping.

prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

The Defendant was convicted of especially aggravated kidnapping, which is defined as false imprisonment "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1). The Defendant argues that she cannot be found guilty of the crime of especially aggravated kidnapping because she did not personally rob the victim at gunpoint; she did not personally order the victim to open the safe; nor did she possess a gun. In short, the Defendant argues that she cannot be found guilty because she was not the principal in the crimes committed by her two cohorts. The Defendant's argument is misplaced. Our law supports the Defendant's convictions under the theory of criminal responsibility.

Tennessee statutes provide that a person is "criminally responsible for an offense committed by the conduct of another if: [A]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). This statute codifies the longstanding common law theories of "accessories before the fact and aiders and abettors." Id., Sentencing Commission Comments. However, criminal responsibility is not itself a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

Under a theory of criminal responsibility, a defendant's presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which that defendant's participation in the crime may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have played a physical role in the crime in order to be held criminally responsible for the crime. See State v. Caldwell, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). Rather, to be held criminally responsible for the acts of another, the defendant need only "'associate himself with the venture, act

with knowledge that the offense is to be committed, and share in the criminal intent of the principle in the first degree.'"  Id. (citing State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994)).

In this case, the record reveals that the Defendant both acted with intent to "assist [in] the commission of the offense[s]" and "benefit[ed] in the proceeds or results of the offense."  Tenn. Code Ann. § 39-11-402(2).  In addition to her videotaped confession to Agent Stout, the Defendant admitted her involvement in the commission of the offenses to Ms. Nason in the hotel room.  The Defendant admitted, "I did the plotting and they did the fixing."  She further stated, "I'm pretending like I'm going out the door and I open the door for them."  The Defendant also benefitted from the proceeds of the offenses, stating that she received $1,000 for her role in the crimes.

We conclude that the Defendant's aid in the commission of the offenses, as well as her monetary benefit, have rendered her criminally responsible for the especially aggravated kidnapping of Ms. McGarr.  This issue is without merit.

## IV.  Sentencing

As her final issue, the Defendant contends that the trial court erred in imposing consecutive sentencing.  Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing.  See Tenn. Code Ann. § 40-35-210(b);[5] State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).  To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.  See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct.  See Tenn. Code Ann. § 40-35-401(d).  However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record,

---

[5]We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005.  However, the Defendant's crimes in this case, as well as her sentencing, predate the effective date of these amendments.  Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of the following criteria applies:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). These criteria are stated in the alternative; therefore, only one need exist to support the imposition of consecutive sentencing. In State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: The court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. Wilkerson, 905 S.W.2d at 937-38.

Although the Defendant's presentence report is included in the record, the transcript of the sentencing hearing is not. Again, we note that it is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). In the absence of an adequate record on appeal, this court must presume that the trial court's actions below are correct and are supported by sufficient evidence. Oody, 823 S.W.2d at 559.

In the order imposing consecutive sentences, which is included in the record, the trial court stated that it had imposed consecutive sentences based on its findings that the Defendant was a

dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high.[6]  The trial court further concluded that consecutive sentencing was reasonably related to the severity of the offenses and was necessary to protect the public.  We conclude that the record in this case sufficiently supports these findings.  Accordingly, we affirm the trial court's imposition of consecutive sentencing.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

                                      _____

                                      DAVID H. WELLES, JUDGE

---

[6]The record reflects that the Defendant's effective twenty-three year sentence was ordered to be served consecutively to a sentence of life without parole imposed in Rutherford County.